UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENDY KAUFFMAN-STACHOWIAK, <br><br> Plaintiff, <br><br> v. <br><br> OMNI HOTELS MANAGEMENT CORPORATION, <br><br> Defendant. | Case No. 15-cv-05186-WHO <br><br> **ORDER DENYING MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 34 |

## INTRODUCTION

Plaintiff Wendy Kauffman-Stachowiak brings this negligence action against defendant Omni Hotels Management Corporation ("Omni"), alleging that on January 29, 2013, an Omni bellman allowed a car door to hit her face as she entered the backseat. She asserts that the impact gave her a bloody lip, a headache, and nausea, and that it exacerbated her preexisting spinal problems, requiring her to undergo cervical fusion surgery on June 4, 2013. Omni moves for summary judgment. It argues that Kauffman-Stachowiak has failed to produce sufficient evidence for a jury to reasonably conclude either (1) that an Omni bellman in fact allowed a car door to hit her face, or (2) that the incident in fact exacerbated her preexisting spinal problems. Omni's arguments highlight several reasons to question Kauffman-Stachowiak's story, and they may persuade a jury to find in Omni's favor. On summary judgment, however, I do not make credibility determinations or weigh competing evidence. Kauffman-Stachowiak has presented enough evidence to withstand summary judgment. Omni's motion is DENIED.

## BACKGROUND

**I.   FACTUAL BACKGROUND**

   **A.   January 29, 2013 Incident**

Kauffman-Stachowiak and her husband, David Stachowiak, were guests at the Omni San

1  Francisco Hotel (the "Omni"), located at 500 California Street, from January 26, 2013 to January

2  29, 2013. Kauffman-Stachowiak Depo. at 139-40 (Dardine Decl. Ex. A, Dkt. No. 38-1; Rector

3  Decl. Ex. 1, Dkt. No. 35); Kauffman-Stachowiak Decl. ¶ 2 (Dkt. No. 38-2).

4      Kauffman-Stachowiak left the Omni to get to the airport at approximately 8:30 a.m. on

5  January 29, 2013. Kauffman-Stachowiak Depo. at 147-48, 151. Mr. Stachowiak was remaining

6  in San Francisco for business and was not with her at the time. *Id.* at 139-40. A uniformed Omni

7  bellman opened the front door of the hotel for Kauffman-Stachowiak as she exited the building,

8  and she asked the bellman how to get a taxi to the airport.[1] *Id.* at 149-51; Kauffman-Stachowiak

9  Decl. ¶ 4. The bellman advised her to take a hotel car instead of a taxi. Kauffman-Stachowiak

10 Depo. at 151. He told her, "You come with me," grabbed her luggage, and walked her to a "black

11 Lincoln Town Car, like a Lincoln Town Car" located approximately two car lengths from the front

12 door of the hotel. *Id.* at 152-53.

13     While the car's driver loaded Kauffman-Stachowiak's luggage into the trunk, the bellman

14 held the car's rear passenger door for her. *Id.* at 164-65. She stepped off the curb and placed her

15 left foot and shoulder into the car, but as she did so, the car door "came and smashed into [her]

16 face," causing her head to "sna[p] back" and sending her "kind of flying" into the back seat. *Id.* at

17 164-65; *see also id.* at 168-69 (stating that the car door hit her in the "mouth area," driving her

18 "tooth . . . through [her] lip" and pushing her to "the middle of the back seat").

19     In a declaration submitted in opposition to Omni's motion for summary judgment,

20 Kauffman-Stachowiak asserts that the bellman either (1) "released [the car door] before [she] was

21 fully seated in the vehicle," or (2) "closed [the car door] prematurely." Kauffman-Stachowiak

22 Decl. ¶ 3. At her deposition, she described the bellman's alleged negligence in slightly different

---

[1] At her deposition, Omni showed Kauffman-Stachowiak photographs of all Omni San Francisco Hotel bellmen and doormen on duty on January 29, 2013, together with photographs of Omni employees from other locations, and asked her to identify the bellman from the January 29, 2013 incident. *See* Simonsen Decl. ¶¶ 2-4, Exs. 1-2 (Rector Decl. Ex. 12, Dkt. No. 35); Kauffman-Stachowiak Depo. at 157-161. Kauffman-Stachowiak wrote "no" on every picture of the San Francisco employees and narrowed the field down to three individuals, none of whom have ever worked for Omni in San Francisco. *See* Simonsen Decl. ¶¶ 2-4, Exs. 1-2. She testified that she was "fairly sure" that the people she eliminated were not the bellman from the incident. Kauffman-Stachowiak Depo. at 157, 161.

terms:

> Q: And then, when you say [the car door] slammed into you, . . . did the bellman let go of the handle and slam it into you?
>
> A: No.
>
> Q: Okay. When you say he slammed it into you, how did that happen?
>
> A: He let go of the door, and the door, just due to gravity because you are on a hill, came smacking into my head.
>
> Q: Okay. So he let go of the door, gravity pulled it, and it . . . hit you in the head?
>
> A: Yes.

Kauffman-Stachowiak Depo. at 166.

> Q: And you put your left leg and left shoulder into the Town Car, correct?
>
> A: Yes . . .
>
> Q: And the bellman had his hand on the door at that time, correct?
>
> A: When I first got in, yes.
>
> Q: And then he let it go and gravity brought the door down towards you, correct?
>
> A: Yes.
>
> Q: And he did not slam the door, it was just gravity, correct?
>
> A: As I recall, yes.

*Id.* at 218.

Kauffman-Stachowiak states that immediately following the incident somebody (either the driver or the bellman) asked her if she was okay, and the bellman ran back to the hotel to get ice. *Id.* at 169-70. The car then left for the airport. *Id.* at 174. She applied the ice to her lip during the trip and had a "horrible headache" and nausea, but she did not seek medical attention. *Id.* at 175.

At the airport, Kauffman-Stachowiak spoke with her husband on the phone and asked him to report the incident to the hotel. *Id.* at 176. She recalls that she told him that she had a "violent headache" and that she was "already sounding kind of funny . . . because [she] had a very big fat lip." *Id.* at 176-77; *see also* David Stachowiak Depo. at 10-11 (Dardine Decl. Ex. B, Dkt. No. 38-

3

1). Mr. Stachowiak was in a business meeting at the Omni when he received the call. David Stachowiak Depo. at 9-10. He states that he went to the front door of the hotel and spoke with "the head doorman in the outfit, [the one] that kind of wears the bigger outfit," to find out what had happened. *Id.* at 14. The head doorman allegedly "acknowledged what had happened" and confirmed that "they had given [Kauffman-Stachowiak] a bag of ice for lip." *Id.* at 14-15. When asked to clarify, Mr. Stachowiak stated at his deposition that the "head doorman" he spoke with was the bellman who had held the car door for his wife.[2] *Id.*

Mr. Stachowiak subsequently went to the front desk of the hotel and reported the incident to a "gentleman from the back." *Id.* at 20-21. John Marple, the former Front Office Supervisor at the Omni, states that he spoke with Mr. Stachowiak on January 29, 2013, and that Mr. Stachowiak

> told me that his wife hit her head getting into a Town Car on her way to the airport that morning. Mr. Stachowiak was nonchalant and said his wife was fine, no one from Omni was at fault for the accident, but he was reporting it in case there had been other incidents.

Marple Decl. ¶¶ 1, 3-4 (Rector Decl. Ex. 8, Dkt. No. 35). Marple forwarded Mr. Stachowiak's report to Paul Kesinger, Director of Loss Prevision at the Omni, who followed up with Mr. Stachowiak on the day of the incident and again the next day. *Id.* ¶ 5. In an email dated June 17, 2013, Kesinger describes his communications with Mr. Stachowiak as follows:

> I remember speaking to the husband, Dave, on the afternoon of the incident, and he admitted that the incident, a bump to the head, was due to his wife being in a hurry when entering the vehicle. Dave was very casual about the situation, and did not ask for any follow up. I talked to him the next day to see how his wife, Wendy, was feeling, and he said that his wife was feeling much better. She just had a bump on her head. He declined to offer any more details about the issue, and said that a formal report was not necessary. He told me at that time that the hotel and Town Car driver were not considered to be at fault. He also said it was just a simple accident.

Rector Decl. Ex. 9 (Dkt. No. 35). At his deposition, Mr. Stachowiak denied having told any Omni employee that "[his] wife was okay," that "the accident was not the fault of [the hotel]," or that "the incident was due to [his] wife being in a hurry." David Stachowiak Depo. at 31-33.

---

[2] At his deposition, Omni showed Mr. Stachowiak the same set of photographs of Omni employees it had previously shown to Kauffman-Stachowiak. *See* David Stachowiak Depo. at 17-19. Omni asked Mr. Stachowiak to identify the doorman he spoke with, and he selected one of the same three individuals his wife had selected. *See id.*

4

Omni contends that "it is physically impossible for the incident to have occurred as [Kauffman-Stachowiak] now claims." Mot. at 9 (Dkt. No 34). Along with its motion for summary judgment, Omni submits a declaration from Dr. Jay Mandell, a mechanical engineer specializing in accident reconstruction, biomechanics, and mechanical design analysis. Mandell Decl. ¶ 1 (Rector Decl. ¶ 1, Dkt. No. 35). Dr. Mandell examined the location of the Omni and the rear passenger doors of three Lincoln Town Cars and concludes that "[t]he rear passenger door of the Lincoln Town Car will not close by gravity alone on California Street in front of the Omni San Francisco Hotel . . . In order to close, the Town Car must be given some external impetus."[3] *Id.* ¶¶ 4-5. He also opines that

> [a] person struck in the mouth by the closing rear passenger door would not be thrown into the back seat of the vehicle as Ms. Kauffman-Stachowiak testified. If she was struck in the mouth, Ms. Kauffman-Stachowiak's mouth must have been at the height of the top edge of the door, about 4 feet, 9 inches above the pavement. At that point, most of her head would have been above the level of the edge of the roof of the car, i.e., the top of her head would have been about 6-8 inches above the roof. Even if the impact force were great enough to knock her over, her trajectory would cause her to hit her head on the roof, which would prevent her from being thrown into the back seat.

*Id.* ¶ 7. Kauffman-Stachowiak submits no competing expert testimony. However, she points out that Omni did not disclose Dr. Mandell as an expert witness until less than a week before it filed its summary judgment motion, and that she has not yet had an opportunity to depose him. Oppo. at 13-14 (Dkt. No. 38).

### B.   Kauffman-Stachowiak's Medical Treatment

Several weeks after the January 29, 2013 incident, on March 9, 2013, Kauffman-Stachowiak went to the hospital because "[t]he evening before, . . . the pain [at the top of her left shoulder] had been just increasing to the point where it was debilitating." Kauffman-Stachowiak Depo. at 190-93. She was given a cervical collar and referred to the emergency department, where she saw Dr. Douglas Propp. *Id.* Dr. Propp's notes from his examination state, "This 52-year-old-female had an injury 3 weeks ago where she struck her chin on top of a car door. Her head sprung

---

[3] Videos of Dr. Mandell's work with the Lincoln Town Cars have been posted to YouTube and can be viewed at youtu.be/t0XNVJbsveI and youtu.be/bcqQ0YcgtTY. Mandell Decl. ¶ 5.

1   backwards and she's had some persistent left shoulder discomfort." Dardine Decl. Ex. D (Dkt. No

2   38-1). Dr. Propp prescribed Kauffman-Stachowiak some medications and advised her to visit Dr.

3   Steven Mardjetko, an orthopedic surgeon. *Id.*

4       Kauffman-Stachowiak saw Dr. Mardjetko on March 13, 2013. Dardine Decl. Ex. E (Dkt.

5   No. 38-1). Dr. Mardjetko wrote in his notes that Kauffman-Stachowiak "hit her chin on the top of

6   a car door" and "developed headaches and pain into her left shoulder soon thereafter." *Id.* When

7   Kauffman-Stachowiak reported continuing pain at a follow-up visit on April 22, 2013, Dr.

8   Mardjetko referred her to Dr. Jerry Bauer. Dardine Decl. Ex. G (Dkt. No. 38-1). Kauffman-

9   Stachowiak saw Dr. Bauer on May 2, 2013. Dardine Decl. Ex. H (Dkt. No. 38-1). Dr. Bauer's

10  notes state that Kauffman-Stachowiak has "radicular pain from her neck to her shoulder blade and

11  down her left arm," and that the pain began "in January 2013 [when she was] getting into a hotel

12  car [and] the door slammed against her face and her head jerked backwards." *Id.*

13      On June 4, 2013, Kauffman-Stachowiak underwent cervical fusion surgery performed by

14  Drs. Mardjetko and Bauer. Dardine Decl. Exs. I, J (Dkt. No. 38-1). The doctors' notes from the

15  surgery indicate that on the left side of Kauffman-Stachowiak's back they observed a "partially

16  calcified" herniated disc, which they "dissected from the nerve and removed, thereby

17  decompressing the nerve root." Dardine Decl. Ex. J at 135 of 149; *see also* Dardine Decl. Ex. I at

18  130 of 149. Stachowiak states that both doctors have informed her that "the need for [her] cervical

19  fusion surgery was directly related to the traumatic injury that occurred at the Omni San Francisco

20  Hotel on January 29, 2013." Kauffman-Stachowiak Decl. ¶¶ 11-12.

21      Omni highlights that Kauffman-Stachowiak has a history of spine problems stretching

22  back to before the January 29, 2013 incident. Mot. at 2-4, 14-16; Reply at 6-7 (Dkt. No. 39). It

23  submits an expert declaration from neurosurgeon Dr. Bruce McCormack, who opines as follows:

> 4. To a reasonable degree of medical certainty, Ms. Kauffman-Stachowiak's cervical spine conditions were neither caused nor made worse by the car door incident she testified occurred in January 2013. To a reasonable degree of medical certainty, Ms. Kauffman-Stachowiak's cervical surgery in June 2013 was not necessitated in any sense by the car door incident she testified occurred in January 2013.
>
> 5. [Ms. Kauffman-Stachowiak's] medical records indicate she was

receiving chiropractic treatment from Dr. Maggie Gable both before and after her trip to San Francisco in January 2013. On November 1, 2012, Dr. Gable performed a clinical assessment and diagnosis of Ms. Kauffman-Stachowiak. As part of that assessment and diagnosis, Dr. Gable performed a Shoulder Depression test, a Cervical Compression/Spurling's test, and a Soto-Hall test on Ms. Kauffman-Stachowiak. The Shoulder Depression test was positive left, meaning Ms. Kauffman-Stachowiak experienced left-sided radicular pain in November 2012 . . . The Soto-Hall test was also positive, meaning Ms. Kauffman-Stachowiak experienced pain in her lower neck and mid-spine in November 2012. Ms. Kauffman-Stachowiak complained of left-sided radicular pain in March 2013 as well. The tests Dr. Gable performed reveal and cross-confirm that Ms. Kauffman-Stachowiak's neck condition was symptomatic roughly three months before the car door incident to which she testified.

6. Dr. Gable's medical records reveal she treated Ms. Kauffman-Stachowiak 12 times in November 2012, December 2012, and January 2013. Ms. Kauffman-Stachowiak's condition worsened on December 4, 2012 and she reported to Dr. Gable her right upper back has been very tender, tight, and painful for the past week. Ms. Kauffman-Stachowiak reported she had stabilized by January 23, 2013 when her pain levels decreased and tension slowly decreased. On January 25, 2013, Ms. Kauffman-Stachowiak reported to Dr. Gable her pain levels have decreased and tension has slowly decreased. Dr. Gable found she had hypomobility, increased tissue tenderness, and end point tenderness at the C-4 to C-7 levels which are the same levels on which Ms. Kauffman-Stachowiak eventually had fusion surgery. Ms. Kauffman-Stachowiak received a cervical spine adjustment that day.

7. Ms. Kauffman-Stachowiak testified she sought no medical treatment in San Francisco the day of the accident. She testified she sought no medical treatment in Chicago when she landed or any time before March 9, 2013. Had Ms. Kauffman-Stachowiak experienced an acute injury, such as a traumatically herniated disc, the resultant pain would typically require prompt medical attention.

8. . . . After the San Francisco trip, Dr. Gable's records reveal Ms. Kauffman-Stachowiak saw her next on February 8, 2013. Ms. Kauffman-Stachowiak reported that her pain levels and tension had decreased. As with the day before her trip to San Francisco, Dr. Gable found she had hypomobility, increased tissue tenderness, and end point tenderness at the C-4 to C-7 levels which are the same levels on which Ms. Kauffman-Stachowiak eventually had fusion surgery. Ms. Kauffman-Stachowiak received a cervical spine adjustment that day. Dr. Gable's records do not indicate any increased pain, worsening conditions, new problems, or any accident or incident in San Francisco. If Ms. Kauffman-Stachowiak had suffered an acute injury such as a herniated disc in San Francisco, she would have had much worse symptoms on February 8, 2013.

9. Dr. Gable's records reveal Ms. Kauffman-Stachowiak saw Dr. Gable again on February 15, 2013, February 21, 2013, and March 1, 2013. As with her treatment the day before her trip to San Francisco,

> Ms. Kauffman-Stachowiak reported her pain levels and tension had decreased, Dr. Gable found she had hypomobility, increased tissue tenderness, and end point tenderness at the C-4 to C-7 levels, and Ms. Kauffman-Stachowiak received a cervical spine adjustment. Dr. Gable's records those days likewise do not indicate any increased pain, worsening conditions, new problems, or any accident or incident in San Francisco.
>
> 10. Dr. Gable's records reveal Ms. Kauffman-Stachowiak saw Dr. Gable on March 5. Ms. Kauffman-Stachowiak reported a major flare up in her left shoulder and upper back area. There is no mention of an accident or incident in San Francisco however.
>
> [ . . .]
>
> 12. On March 9, 2013, Ms. Kauffman-Stachowiak's neck was x-rayed. Her treating physicians found no fracture or dislocation and that the x-rays showed severe degenerative disc disease. I have reviewed the x-rays as well and concur.
>
> 13. On March 20, 2013, Ms. Kauffman-Stachowiak underwent a MRI. Her treating physicians found the MRI confirmed there was no fracture of dislocation and that Ms. Kauffman-Stachowiak multilevel disc degeneration and spondylosis with multilevel disc bulging. I have reviewed the MRI as well. There is no acute injury noted and the MRI shows severe degenerative disc diseases as well as a paracentral (bulging) disc at the C6-7 level.
>
> 14. On June 4, 2013, Ms. Kauffman-Stachowiak underwent surgery. Her physicians' post-operative diagnoses was extensive degenerative disc disease. I have reviewed the surgical notes. They confirm Ms. Kauffman-Stachowiak was suffering from degenerative diseases and not any injury caused or made worse by the car door incident to which she testified. The paracentral (bulging) disc was partially calcified. That means it had been there for years, i.e., it would be medically impossible to have suffered a herniated disc in January 2013 and for it to have partially calcified by June 2013. In addition, Ms. Kauffman-Stachowiak had bone growth between her C5-6 and C6-7 disc spaces. Had there been a trauma sufficient to cause a disc to rupture, the boney growth would also have fractured or there would have been bruising and tearing of ligaments noted. There is no mention of fractured or loose bone spurs by her surgeons. There are no other indications of acute or traumatic injury either.

McCormack Decl. ¶¶ 4-15 (Rector Decl. Ex. 2, Dkt. No. 35).

Kauffman-Stachowiak submits no competing expert testimony. She contends, however, that the spinal problems for which she was receiving treatment before January 29, 2013 were limited to "lower back discomfort and occasional shoulder tightness." Kauffman-Stachowiak Decl. ¶ 5. She states that before the incident, she had "never experienced radiating left arm pain or numbness" and had "never experienced neck or shoulder pain that was so severe as to require

8

emergency department treatment." *Id.* ¶¶ 5-6. She also asserts that Drs. Mardjetko and Bauer will opine that the January 29, 2013 incident contributed to her need for cervical fusion surgery, but that the earliest dates the doctors were available for depositions were August 15, 2016 (for Dr. Mardjetko) and September 12, 2016 (for Dr. Bauer). Oppo. at 9-10, 14.

## II. PROCEDURAL BACKGROUND

Kauffman-Stachowiak filed her original complaint in the Superior Court of California for the County of San Francisco on January 20, 2015 and her first amended complaint on October 9, 2015. Notice of Removal ¶¶ 4-5, Exs. A, B (Dkt. No. 1). The first amended complaint brings one cause of action for negligence and alleges that on January 29, 2013,

> an unknown employee of [Omni] closed a vehicle door on [Kauffman-Stachowiak] while she was attempting to sit in the vehicle. Said employee negligently closed the door before [she] was fully seated, causing the door to strike [her] in the head. The strike to the head caused significant injury to [Kauffman-Stachowiak].

Notice of Removal Ex. B.

Omni removed the case to federal court on the basis of diversity jurisdiction on November 12, 2015. Notice of Removal ¶ 9. After fact discovery closed, it moved for summary judgment. Dkt. No. 34. I heard argument from the parties on August 10, 2016. Dkt. No. 42.

## LEGAL STANDARD

A party is entitled to summary judgment where it "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if it could reasonably be resolved in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material where it could affect the outcome of the case. *Id.*

The moving party has the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the movant has made this showing, the burden shifts to the nonmoving party to identify specific evidence showing that a factual issue remains for trial. *Id.* The nonmoving party may not rest on mere allegations or denials from its pleadings, but must "cit[e] to particular parts of materials in the record"

9

demonstrating the presence of a factual dispute. Fed. R. Civ. P. 56(c)(1)(A). The nonmoving party need not show that the issue will be conclusively resolved in its favor. *See Anderson*, 477 U.S. at 248-49. All that is required is the identification of sufficient evidence to create a genuine dispute of material fact, thereby "requir[ing] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (internal quotation marks omitted). If the nonmoving party cannot produce such evidence, the movant "is entitled to . . . judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323.

On summary judgment, the court draws all reasonable factual inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise a genuine dispute of material fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738-39 (9th Cir. 1979).

## DISCUSSION

The elements of a cause of action for negligence under California are "(a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. Cty. of San Mateo*, 12 Cal.4th 913, 917 (1996) (internal quotation marks, alterations, and emphasis omitted). Omni contends that it is entitled to summary judgment because Kauffman-Stachowiak has not presented sufficient evidence for a jury to reasonably conclude either (1) that an Omni bellman in fact allowed a car door to hit her face, or (2) that the incident in fact exacerbated her preexisting spinal problems.

Omni is not entitled to summary judgment. With respect to breach, Omni identifies several reasons to question the veracity of Kauffman-Stachowiak's story, but it has not shown that a reasonable jury would be required to disbelieve her. Nor has it shown that the slight distinction between her account of the mechanics of the January 29, 2013 incident at her deposition, and that in her declaration, is sufficient to justify application of the sham affidavit rule. *See Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009) (holding that the sham affidavit rule does not preclude

a party from "elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition," and that "minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence" do not justify striking a declaration). On summary judgment, I do not make credibility determinations or weigh competing evidence. Kauffman-Stachowiak has presented sufficient evidence for a jury to decide whether the January 29, 2013 incident occurred in the manner she claims it did.

With respect to causation, Omni does not dispute that, assuming that Kauffman-Stachowiak's account of the incident is accurate, Kauffman-Stachowiak suffered at least some injury as a result (i.e., a bloody lip, a headache, and nausea). At best, then, Omni's causation argument would entitle it to partial summary judgment on the issue of whether Kauffman-Stachowiak could recover for the spinal problems she traces to the incident; the argument would not entitle Omni to judgment in its favor.

Further, even assuming, without deciding, that a jury could not reasonably find that any of Kauffman-Stachowiak's spinal problems were caused by the incident based on the current record, I agree with Kauffman-Stachowiak that summary judgment on the issue would be inappropriate given the testimony she asserts Drs. Mardjetko and Bauer will give. *See Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004) (stating that "summary judgment is disfavored where relevant evidence remains to be discovered," and that "summary judgment in the face of requests for additional discovery is appropriate only where such discovery would be fruitless") (internal quotation marks omitted). Omni contends that the doctors will not be able to testify on causation because Kauffman-Stachowiak did not produce Rule 26(a)(2)(B) reports for them. Reply at 11-15. Given the absence of Rule 26(a)(2)(B) reports for the doctors, they will only be permitted to testify to causation opinions formed during the course of treatment. *See Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011) (holding that "a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment"); *Barnard v. Theobald*, 532 F. Appx. 716, 718 (9th Cir. 2013) (plaintiff's surgeon was "exempt from Rule 26(a)(2)(B)'s written report requirement because his opinions 'were formed during the course of treatment'"). Although Omni argues that

11

the doctors' causation opinions, if they have any, were formed after the course of treatment or are based exclusively on Kauffman-Stachowiak's self-reporting, those facts have not been established.

Accordingly, because there are material facts in dispute concerning breach and causation, I cannot grant Omni's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Omni's motion for summary judgment is DENIED.

**IT IS SO ORDERED**.

Dated: August 15, 2016



WILLIAM H. ORRICK
United States District Judge